

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**THOMAS DAVIS**,
    On behalf of himself and all other
    similarly situated individuals

       **Plaintiff,**

       **v.**

**TOYOTA MOTOR SALES, U.S.A., INC.**
19001 South Western Avenue
Torrance, CA 90501

    Agent for Service of Process:
    <u>N R AUTOMOTIVE INC</u>
    <u>DBA NEW ROC</u>
    <u>47 CEDAR STREET</u>
    <u>NEW ROCHELLE, NY 10801</u>

**TOYOTA MOTOR CORPORATION**
1, Toyota-cho
Toyota, Aichi 471-8571 Japan,

    See service instructions
    in "Parties" section below

       **Defendants.**

**CASE NO**: _____

**JUDGE**: _____

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

1

For his Complaint against the Defendants Toyota Motor Sales U.S.A., Inc., and Toyota Motor Corporation, Plaintiff, Thomas Davis states, based upon personal knowledge, information and belief, and the investigation of his counsel, as follows:

### OVERVIEW & BACKGROUND

Plaintiff brings this litigation seeking a relief for Defendants' failure to properly and timely remedy the defective throttle control system, Electronic Throttle Control System with Intelligence ("ETCS-i") or Electronic Throttle Control System ("ETCS") (collectively "ETC") in multiple models of automobiles manufactured by the Defendants. The defective accelerators on the Defendants' automobiles cause serious safety concerns and in at least one case, the death of a person has been attributed to the inability to stop a vehicle manufactured by the Defendants. The defect causes the accelerator in the Defendants' vehicles to stick, making it difficult if not impossible to stop the vehicle.

In September 2007, Defendants began a series of recalls designed to delay what Defendants knew would be a very expensive defect to remedy in many of their vehicles equipped with electronic throttle controls or so called drive-by-wire accelerator controls.   Defendants initially sought to conceal the true nature of the defect in their electronic throttle controls by claiming that their vehicles' sudden acceleration problems were caused by floor mats. Defendants recalled certain all-weather floor mats in some of their vehicles.   However, it quickly became clear that the recall of the accessory floor mat did not solve the sudden acceleration problems in their vehicles.

On September 29, 2009 Defendants Launched a Safety Recall on eight Toyota and Lexus

2

Vehicles. In conjunction with the recall the National Highway Traffic Safety Administration (NHTSA) alerted Lexus and Toyota owners about conditions involving the floor mats that could cause the accelerator to get stuck under certain conditions. Multiple years of each of the eight models were included in the September 2009 recall.   Defendant's reports to NHTSA and the public were false and misleading as Defendants were aware that other vehicles were involved and that floor mats were not the cause of the sudden acceleration in many vehicles.   Defendants and the NHTSA recommended removing floor mats on the driver's side of these eight models.

Following the September 2009 recall, Defendants continued to receive reports of sudden acceleration in the Defendants' vehicles.   Defendants continued to falsely claim that the incidents were caused by floor mats, the configuration of accelerator pedals and difficulty shutting off models with keyless ignition.

Recently, Defendants acknowledged that additional models were defective and announced the recall of additional models and suspension of the sale of many of the Defendants' vehicles until the defects could be remedied.

## JURISDICTION AND VENUE

This Court has jurisdiction over the parties and subject matter of this litigation.   This Court has been granted jurisdiction over the subject matter of this litigation by the legislature. This Court has personal jurisdiction over the Parties to this litigation because the Plaintiff is a resident of this jurisdiction and the Defendants have conducted sufficient business within this jurisdiction such that they may reasonably anticipate being hailed into court in this jurisdiction.

Venue is proper in this jurisdiction because one or more of the Parties resides in this jurisdiction and many of the acts complained of herein occurred within this jurisdiction.

## PARTIES

Plaintiff Thomas Davis is a resident of Westchester County, New Rochelle, New York. Plaintiff is the owner of a vehicle manufactured and sold by the Defendants.

Defendant Toyota Motor Sales, U.S.A., Inc. ("TMS"), at all times mentioned, was and is a California corporation, organized and existing under the laws of the State of California, with its principal place of business in Los Angeles, California. Defendant TMS engages in the sale of automobiles in this State derives substantial revenue from sales within this State and has sufficient contacts with this State to give this Court jurisdiction.

Defendant Toyota Motor Corporation ("TMC"), at all times mentioned, was and is a foreign corporation maintaining its corporate headquarters in Toyota City, Aichi Prefecture, Japan. Defendant may be served with Citation in accordance with the Federal Rules of Civil Procedure and the Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents in Civil or Commercial Matters, TIAS # 10072 (U.S. Treaties & other International Acts) and 20 U.S.T. §361 (U.S. Treaties & other International Agreements), by serving the citation upon the Office of the Ministry of Foreign Affairs of Japan, which shall then serve the agent or officers of TMC at its offices at 1 Toyota-Cho, Toyota City, Aichi Prefecture 471-8571, Japan, Phone: (0565) 28-2121, or otherwise pursuant to the laws of Japan.   TMC has sufficient contacts with this State to give this Court jurisdiction.

## FACTS

Since the Defendants made the switch to their "drive by wire" electronic throttle control system, or ETC system, complaints of unintended acceleration and sticking of the throttle in the Defendants' vehicles have increased.   When the ETC system was first introduced by Toyota in

1998, vehicles using it also had a mechanical throttle as a failsafe (or back-up) in the event of a problem with the electronic throttle control system.    Many if not all of the newer vehicles have no such failsafe and, inexplicably, the system was not designed so that the application of the brakes would automatically disengage the accelerator.

Defendants have attributed the increased incidents of unintended acceleration or sticking of the throttle to improper floor mats or improperly designed accelerator pedals. Plaintiff and Class Members have endured numerous ill-fated attempts to remedy the unintended acceleration and throttle sticking in the Defendants' vehicles.

In September 2007, Defendants began a series of recalls that have failed to address the real problem with the Defendants' "drive by wire" throttle control.    Defendants recalled an accessory all-weather floor mat sold for use in some 2007 and 2008 model year Lexus ES 350 and Toyota Camry vehicles because of accelerator sticking problems. The recall of the accessory floor mat did not solve the unintended acceleration or throttle sticking in the Defendants' vehicles.

On September 29, 2009 the NHTSA issued a warning to owners of Toyota and Lexus vehicles about "conditions that could cause the accelerator to get stuck open." The NHTSA "strongly encouraged" owners to take out the driver's side floor mats and not to replace the mat. NHTSA also warned consumers "a stuck accelerator may result in very high vehicle speeds and a crash, which could cause serious injury or death." That same day, the Defendants launched a safety recall on eight specific Toyota and Lexus Vehicles. In conjunction with the recall the National Highway Traffic Safety Administration (NHTSA) alerted Lexus and Toyota owners about conditions that could cause the accelerator to stick under certain conditions.    Multiple years of each of the eight models have the defective accelerators. The models recalled by the Defendants

in September 2009 included:

- 2007-2010 Toyota Camry
- 2005-2010 Toyota Avalon
- 2004-2009 Toyota Prius
- 2005-2010 Toyota Tacoma
- 2007-2010 Toyota Tundra
- 2007-2010 Lexus ES 350
- 2006-2010 Lexus IS 250; and
- 2006-2010 Lexus IS 350.

These reports to NHTSA and the public were false and misleading as Toyota and Lexus were aware that other vehicles were involved and that floor mats were not the cause of the sudden acceleration in many vehicles.

Upon information and belief these reports to NHTSA and the public were false and misleading as Toyota and Lexus were aware that other vehicles were involved and that floor mats were not the cause of the sudden acceleration in many vehicles.

Based upon representations made by Toyota, the NHTSA strongly recommended taking out removable floor mats on the driver's side in certain models and advised owners not to replace them with any other mat, either from Toyota or any other brand. According to U.S. Transportation Secretary Ray LaHood "[t]his is an urgent matter," and "[f]or everyone's sake, we strongly urge owners of these vehicles to remove mats or other obstacles that could lead to unintended acceleration."

NHTSA reported "that there continued to be reports of accelerator pedal clearance issues which provide the potential for an accelerator pedal to get stuck in the full open position. A stuck accelerator may result in very high vehicle speeds and a crash, which could cause serious injury or death." NHTSA said that, "Toyota has announced that it will soon launch a safety recall of various

model year vehicles to redress the problem." However the safety agency warned owners to remove all driver-side floor mats from the affected models immediately as an interim safety measure in advance of the recall.

From September 2009, Defendants continued to receive reports of vehicles accelerating rapidly after release of the accelerator pedal. Although continuing to receive complaints of sudden and unexpected acceleration in various vehicles, many of which were not included in the recall, Defendants continued to falsely claim that the incidents" appear to be related to factors including the use of a variety of unsecured mats, the particular configuration of the accelerator pedals in these vehicles, and the unique steps needed to shut off the engines in some of these vehicles with keyless ignition." During the following 60 days Defendants issued false and misleading reports denying defects leading to the reports of sudden and unexpected acceleration.

On November 5, 2009, NHTSA issued a statement correcting inaccurate and misleading information put out by Toyota concerning a safety recall involving 3.8 million Toyota and Lexus vehicles. NHTSA further reported that," [it] constantly monitors consumer complaints and other data. This comprehensive recall focuses on pedal entrapment by floor mats, but NHTSA will fully investigate any possible defect trends in these vehicles. NHTSA found that a press release put out by Toyota earlier that week about the recall of 3.8 million Toyota and Lexus vehicles inaccurately stated NHTSA had reached a conclusion "that no defect exists in vehicles in which the driver's floor mat is compatible with the vehicle and properly secured." The statement issued by NHTSA to correct Toyota's misleading press release provided, "NHTSA has told Toyota and consumers that removing the recalled floor mats is the most immediate way to address the safety risk and avoid the possibility of the accelerator becoming stuck. But it is simply an interim measure. This remedy

does not correct the underlying defect in the vehicles involving the potential for entrapment of the accelerator by floor mats, which is related to accelerator and floor pan design. Safety is the number one priority for NHTSA and this is why officials are working with Toyota to find the right way to fix this very dangerous problem. This matter is not closed until Toyota has effectively addressed the defect by providing a suitable vehicle based solution." NHTSA further reported that,"[it] constantly monitors consumer complaints and other data. This comprehensive recall focuses on pedal entrapment by floor mats, but NHTSA will fully investigate any possible defect trends in these vehicles.

NHTSA also provided an accurate timeline of events to clarify the false statements issued by the Defendants:

### TIMELINE OF EVENTS

- On September 29, 2009, NHTSA issued a Consumer Alert warning owners of Toyota and Lexus vehicles about "conditions that could cause the accelerator to get stuck open." As an interim measure, NHTSA "strongly encouraged" owners of specific models to take out the removable driver's side floor mats and not to replace them any other type of mat. NHTSA warned consumers "a stuck accelerator may result in very high vehicle speeds and a crash, which could cause serious injury or death."

- On the same day, Toyota issued a voluntary recall of 3.8 million vehicles to address problems caused when removable floor mats push the accelerator pedal to the floor.

- NHTSA officials are meeting with Toyota to hear their action plan for redesigning the vehicles and correcting this very serious defect. "

In early October 2009, Defendants announced the recall of additional vehicles and said it would soon develop a vehicle-based remedy to reduce the risk of a crash due to accelerator pedal entrapment. On or about November 25, 2009, Defendants announced that it had identified a vehicle-based remedy to fix a sudden acceleration safety issue involving floor mats trapping

accelerator pedals in various Toyota and Lexus models.   Once again Defendants incorrectly assured consumers that the only models involved in the recall were:

- 2007 to 2010 Toyota Camry;

- 2005 to 2010 Toyota Avalon;

- 2004 to 2009 Toyota Prius;

- 2005-2010 Toyota Tacoma;

- 2007-2010 Toyota Tundra;

- 2007-2010 Lexus ES 350;

- 2006-2010 Lexus IS 250; and

- 2006 to 2010 Lexus IS 350.

To avoid having to address the real problem with the "drive by wire" throttle control, Defendants claimed they would reconfigure the accelerator pedal, and in some cases the shape of the floor surface under the pedal, to address the risk of pedal entrapment due to floor mat interference, particularly with regard to inappropriate or improperly attached floor mats. Furthermore, Defendants claimed they would develop replacement pedals for these vehicles, which would become available for some models in April 2010.   Defendants stated that they will provide owners with the new pedal, when it becomes available, even if the vehicle has already received the modified pedal under the recall.

Although it had knowledge of continued reports of accelerator problems in other vehicles Defendants stated that they will only genuine Toyota or Lexus accessory all-weather floor mats with newly-designed replacement driver- and front-passenger side all-weather mats limited to those vehicles identified in their recall and not other vehicles it sold.

9

As part of the repair Defendants stated that they would, in addition to the announced vehicle-based remedies, install a brake override system on the involved Camry, Avalon and Lexus ES 350, IS 350 and IS 250 models as an "extra measure of confidence."  The brake override system would ensure the vehicle would stop if both the brake and the accelerator pedals are simultaneously applied.

Defendants advised that they intended to notify vehicle owners on a rolling basis, starting with owners of the ES 350, Camry, and Avalon vehicles. While awaiting Defendants' notification, NHTSA urges owners to remove all removable drivers' side floor mats and not replace them until their vehicles have received the remedies being provided by Toyota.

Defendants claimed that they would begin making the necessary fixes to the recalled vehicles beginning early in 2010, perhaps in January. Initially, Toyota dealers were instructed on how to reshape existing accelerator pedals. Later, replacement accelerator pedals will be available for installation on vehicles not yet remedied or, if the owner so chooses, even to replace the modified pedals.

At no time during 2009 did Toyota or Lexus acknowledge that the unexpected acceleration problems was a wide spread defect in many if not all of its product line thereby leaving purchasers of its vehicles at risk for sudden and unexpected acceleration.

On or about August 08, 2009 Plaintiff leased a 2009 Toyota Venza, VIN 4T3ZE11A49U010965, ("the subject vehicle") which was made in Japan by the Defendants.

The Defendants designed, manufactured, distributed, promoted and placed the subject vehicle into the stream of commerce.

While publicly blaming floor mats for their SUA problem, tellingly, Defendants have

10

recently indicated that they are considering software changes to the on-board computer systems as a solution to the sudden and unintended acceleration problems with their vehicles. The considered software change would cause the accelerator to disengage whenever the brakes are engaged - a simple design concept that other car manufacturers have used for years.

## CLASS ACTION ALLEGATIONS

1.      Plaintiff brings this case on behalf of herself and a class defined as follows:

**All persons who own a Toyota or Lexus vehicle with Electronic Throttle Control System with Intelligence ("ETCS-i") or Electronic Throttle Control System ("ETCS"), excluding Defendants, Defendants' officers, Defendants' directors, Defendants' employees and the Judge to which this case is assigned.**

The Class as defined above is easily identifiable. Class Members can be easily identified using records maintained by the Defendants and Class Members' own vehicles.

2.      The Class definition includes a well-defined time period.  The Class period is limited by the time period during which the Defendants manufactured vehicles with the ETC (Class Period). The applicable limitations periods are either longer than the practice has been in existence and/or tolled due to the Defendants' fraudulent concealment of the misconduct complained of herein.

3.      The Class defined above is too numerous to make joinder practicable.  The precise number of Class Members is unknown to the Plaintiff but it is clear that there are too many for joinder to be practicable.   The number of vehicles containing the ETC easily exceeds one million. Indeed, the Defendants have already recalled in excess of 5 million vehicles due to the unintended acceleration problems.

4.      The Plaintiff is a Member of the Class she seeks to represent and her claims are typical of the claims of the other Class Members. The Plaintiff is the owner of a vehicle with the

ETC manufactured by the Defendants. The Defendants' misconduct complained of herein applies equally to the Plaintiff and Class Members. Like all other Class Members the Plaintiff was sold a vehicle containing a defective throttle control system and the defect has been fraudulently concealed from the Plaintiff and Class Members alike.

5.      The Plaintiff is an adequate representative of the Class and has hired experienced counsel adequate to see this litigation to a conclusion. Neither the Plaintiff nor Plaintiff's counsel have any interests that conflict with those of the Class.

6.      Common questions of law and fact predominate over the questions affecting only individual Class Members.   Individual questions are virtually non-existent and to the extent that individual questions exist, such questions are non-material and have little or no impact on the outcome of this litigation.   Some of the common questions of fact and law include:

         a.      Whether the Defendants' vehicles containing the ETC are defectively manufactured and/or designed;

         b.      Whether the Defendants misrepresented the nature of the defect in their vehicles containing the ETC;

         c.      Whether the Defendants fraudulently concealed the true nature of the defect in their vehicles with the ETC;

         d.      Whether the Defendants engaged in deceptive conduct by misrepresenting to consumers that the defect was due to floor mats or faulty pedals;

         e.      Whether the Defendants breached express warranties through their failure to properly remedy the defective design of their vehicles;

         f.      Whether the defective design of the Defendants' vehicles rendered them

unfit for their intended use;

> g.     Whether the Defendants breached implied warranties of merchantability

and fitness for a particular purpose; and

> h.     Whether the Plaintiff and Class Members are entitled to damages and/or

injunctive relief.

7.     The class action procedural device is the superior method of resolving the claims asserted in this case. Joinder and other procedural methods are impracticable as a means of resolving the claims asserted in this litigation. This Court is an appropriate forum for the resolution of the claims asserted herein. Many of the acts complained of herein occurred in the geographical jurisdiction of this Court and involved residents within the geographical jurisdiction of this Court.

8.     Absent certification of this case as a class action, many of the acts complained of herein will likely be without redress.   The high cost of litigation compared to the low amount of likely recovery by an individual Class Member make it unlikely that individual cases will be filed.

9.      Plaintiff seeks preliminary and permanent injunctive and equitable relief on behalf of the entire Class on grounds generally applicable to the entire Class, to enjoin and prevent Defendants from continuing to sell vehicles with the defective ETC.

10.     Because the Plaintiff seeks injunctive relief and corresponding declaratory relief for the entire Class, the prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Members of the Class and would, as a practical matter, be dispositive of the interests of absentee Class Members who are not parties to the adjudication and may impair and impede the absentee Class Members' ability to protect their interests.

## FRAUDULENT CONCEALMENT

11.        Throughout the Class Period, the Defendants affirmatively concealed the fact that the ETC was defective. The Defendants also omitted material information concerning the nature of the defect in the ETC and misrepresented that the defect was caused by floor mats and/or a faulty pedal design during the entire Class Period.

12.        The Defendants affirmatively misrepresented that the unintended acceleration of their vehicles was caused by floor mats and defectively designed pedals. The Defendants omitted to inform Class Members that the true defect was in the ETC itself and the failure of the Defendants to include safety override controls.

13.        The Defendants were well aware that material facts were affirmatively concealed from the Plaintiff and Class Members and material facts were omitted from information provided to the public.

14.        The Defendants had a duty to inform the Plaintiff and Class Members of all material facts based upon their assumption of that responsibility by inviting consumers to place trust in them to provide safe vehicles.

The running of the statute of limitations has been suspended with respect to any claims that the Plaintiff or Class Members have brought or could bring as a result of the unlawful and fraudulent concealment and course of conduct of the Defendants as alleged herein.   Defendants, through various devices of misrepresentation and secrecy, affirmatively and fraudulently concealed the fact that the ETC was defectively designed and that the Defendants failed to provide safety controls capable of overriding the ETC when it malfunctioned resulting in unintended acceleration of Class Members' vehicles. The Plaintiff and Class Members had no knowledge of the Defendants' scheme and unlawful conduct, or any of the facts that might have lead to the

14

discovery of the Defendants' wrongdoing until shortly before the Complaint was filed.

## COUNT I: BREACH OF IMPLIED WARRANTIES

Plaintiff repeats each and every allegation contained in the prior paragraphs of this Complaint.

15.     Defendants breached the implied warranties of merchantability. The warranty of merchantability is implied into every commercial transaction. The warranty of merchantability requires that products be of reasonable workmanlike quality and free from defects. Defendant impliedly warranted to the Plaintiff and the Class that their vehicles were of merchantable quality. The Defendant breached the warranty of merchantability by designing, manufacturing, distributing, selling and refusing to adequately repair or replace their vehicles after it became apparent they were defective.

16.     At all times Plaintiff and the Class relied on the representations made by Defendant that their vehicles are reliable and of a quality that rendered them suitable for their intended use. Plaintiff and Class Members also relied on the fact that Defendant would produce a vehicle of merchantable quality as required by the implied warranty of merchantability.

Defendant has breached its implied warranties to Plaintiffs and the Class in that the defective design of their vehicles renders them unusable for their intended purpose and Defendants refuse to properly repair or replace these vehicles.

As a direct and proximate cause of the Defendants' breach of the implied warranty of merchantability, the Plaintiff and Class Members have suffered and will continue to suffer losses.

## COUNT II: UNIFORM MISREPRESENTATION/FRAUD

Plaintiff repeats each and every allegation contained in the prior paragraphs of this

Complaint.

17.    The Defendants uniformly misrepresented the true cause of the unintended acceleration of their vehicles. The Defendants owed a duty of care to the Plaintiff and Class Members. The Defendants breached their duty by making the uniform, written, material misrepresentations that the unintended acceleration of their vehicles was caused by floor mats or faulty pedal designs.

18.    Class Members foresee-ably and permissibly relied upon the Defendant's uniform written misrepresentations.  The Defendants' misrepresentations pertained to material terms of the purchase and/or maintenance of the Defendants' vehicles. Had Plaintiffs or Class Members known that the Defendants' vehicles were defectively designed, Class Members would have chosen another vehicle.  Plaintiffs and Class Members could have reduced the likelihood of incurring charges or other problems by purchasing another model of vehicle.

19.    The Plaintiff and Class Members reasonably relied upon the Defendant's uniform misrepresentations to their detriment. Class Members reasonably believed that they were purchasing vehicles that were free from defects. Class Members presumably relied upon the Defendant's misrepresentations of material facts concerning the qualities and characteristics of their vehicles and the purported cause of the unintended acceleration – floor mats and pedals.

20.    Because of the Defendant's uniform misrepresentations, the Class Members have suffered losses and are entitled to a remedy.

## COUNT III: NEGLIGENCE

21.    Plaintiff repeats each and every allegation contained in the prior paragraphs of this Complaint.

22.    Defendants had a duty to the Plaintiff and Class Members to provide a safely designed and manufactured product. Defendants also had a duty to warn the NHTSA, Plaintiff and Class Members of the true nature of the defective design of the Defendants' vehicles. Defendants failed to fulfill this duty to the Plaintiff and Class Members.

23.    Defendants breached the duty owed to the Plaintiff and Class Members by negligently designing its throttle control system such that their vehicles were prone to unintended acceleration and inability to stop that acceleration once started. Defendants failed to properly program software in their vehicles to disengage the throttle when the brake was pressed and/or to design mechanical throttle control systems as a safety check for their electronic throttle control system.

24.    Defendants breached the duty owed to the Plaintiff and Class Members by failing to adequately warn the Plaintiff and Class Members that their vehicles were prone to unintended acceleration and/or difficult to disengage the throttle once the accelerator pedal had been pushed down by the driver. Defendants also failed to adequately warn the Plaintiff and Class Members concerning the methods of disengaging the accelerator pedal manually – by shifting to neutral and/or turning off the vehicle. Defendants also breached their duty to warn the Plaintiff and Class Members when they failed to recall all similarly designed vehicles following the first reports of unintended acceleration or problems disengaging the throttle.

25.    As a direct and proximate result of the Defendants' negligence, the Plaintiff and Class Members have been harmed and will continue to suffer harm. The Plaintiff and Class Members have or will suffer the loss of use of their vehicles and other consequential damages.

## COUNT IV: PRODUCTS LIABILITY

17

26.    Plaintiff repeats each and every allegation contained in the prior paragraphs of this Complaint.

27.    Defendants are and have been at all times pertinent to this Complaint, engaged in the business of designing, manufacturing, assembling, promoting, advertising, distributing and selling Toyota and Lexus vehicles in the United States including those owned by the Plaintiff and Members of the Class defined herein. Defendants knew and anticipated that the vehicles owned by the Plaintiff and Class Members would be sold to and operated by purchasers and/or eventual owners of Defendants' vehicles, including the Plaintiff and Class Members. Defendants also knew that these vehicles would reach the Plaintiff and Class Members without substantial change in their condition from the time that the vehicles rolled off the Defendants' assembly lines.

28.    The defects in the Defendants' acceleration equipment and ETC could not have been anticipated by a reasonable person, and, therefore presented an unreasonably dangerous situation for expected users such as the Plaintiff and Class Members, even when used in a reasonable and foreseeable manner.

29.    Defendants should have reasonably foreseen that the dangerous conditions caused by the defective acceleration equipment and ETC would subject the Plaintiff and Class Members to harm resulting from the defects.

30.    The Plaintiff and Class Members have used the Defendants' vehicles for their intended purpose and in a reasonable and foreseeable manner.  Nevertheless, the Plaintiff and Class Members have suffered damage through no fault of their own but as a direct and proximate result of the Defendants' negligence.

## COUNT V: INJUNCTIVE RELIEF

31.    Plaintiff repeats each and every allegation contained in the prior paragraphs of this Complaint.

32.    As a result of the conduct of the Defendants and likely future conduct of the Defendants, the Plaintiff and Class Members are entitled to injunctive relief on behalf of the Class. Defendants should be enjoined from making any further misrepresentations concerning the cause of the unintended acceleration and/or pedal sticking complaints. Defendants should be ordered to take all steps necessary to fully investigate the source of the problem, including significant testing of the ECT systems and full disclosure of the results of those tests. The Defendants should be ordered to provide alternative transportation to Class Members and no cost to the Class or Plaintiff while repairs that the Defendants claim will remedy unintended acceleration and pedal sticking are performed on the Class Members' vehicles.

33.    Plaintiff and Class Member have a substantial likelihood of success on the merits and Plaintiff and the Class risk irreparable, immeasurable harm should the injunctive relief not be granted. The facts in the public record already demonstrate that the Defendants have not been forthcoming with the Plaintiff and Class Members.  Moreover, the Defendants' have failed to remedy the problem with the accelerator sticking and/or unintended acceleration despite making several attempts and yet continue to tread the same path in an attempt to remedy the defect.

34.    Defendants will incur little if any harm as a result of the requested injunctive relief. Indeed the requested injunctive relief may save the Defendants money in the long run.

## COUNT VI
## UNJUST ENRICHMENT

35.    Plaintiff hereby incorporates by reference paragraphs one through Forty-nine as if fully set forth herein.

36.    Defendants obtained monies from the marketing, labeling and/or sale of its vehicles.

37.    When considered under the totality of the circumstances, as described above, defendants have been unjustly enriched to the detriment of plaintiff and the members of the Class by the retention of consumer's purchase monies received directly or indirectly by Defendants.

38.    This enrichment was conferred on defendants by consumers as a direct result of the failures, omissions and deceptive and fraudulent conduct of defendants.

39.    Defendants' retention of monies they have gained through their failures, omissions and deceptive and fraudulent conduct would be unjust considering the totality of the circumstances.

40.    Defendants should be ordered to disgorge their unjustly obtained monies and to make restitution to plaintiff and the members of the Class in amounts to be determined.

## COUNT VII: VIOLATION GENERAL BUSINESS LAW

41.    Plaintiff hereby incorporates by reference paragraphs one through fifty-four as if fully set forth herein.

42.    Pursuant to New York Gen. Bus. L. § 349, *et seq.*, and other similar state consumer fraud and/or unfair and deceptive trade practices acts, defendants had a statutory duty to refrain from unfair or deceptive acts or practices in the manufacturing, marketing, labeling and sale of its vehicles.

43.    Defendants misrepresented the quality and safety of its vehicles efficacy and fraudulently, intentionally, recklessly or negligently concealed material adverse information regarding the safety of the vehicles it marketed and sold when they had a duty to disclose such

information to the consuming public, including plaintiff.

44.     Defendants made false or misleading statements and omissions about the safety of its vehicles in its, advertising, promotional materials, and other marketing efforts.

45.     Defendants made these misrepresentations and actively concealed adverse information at a time when they knew, or should have known because they were in a superior position to know. Alternatively, defendants made the statements with reckless disregard for their truth or falsity.

46.     The facts misrepresented or not fully disclosed were material.

47.     Defendants made these misrepresentations and actively concealed this information with the intention that plaintiff, class members and the consuming public would rely on the misrepresentations or omissions in selecting its products for purchase and use.

48.     Defendants should have reasonably foreseen that plaintiff and persons similarly situated were likely to rely on the facts misrepresented or not disclosed.

49.     Plaintiff, class members reasonably relied on and were induced by defendants' misrepresentations and/or active concealment in selecting and using Defendants' vehicles. Plaintiff and the members of the Class sustained losses as a direct and proximate result of defendant's misrepresentations or active concealment of information.


**WHEREFORE**, Plaintiff prays for the following relief from the Defendants, severally and jointly:

a.     Compensatory damages;

b.     Punitive damages;

c.    Interest, costs and disbursements; and

d.    Such other and further relief as this Court deems just and proper.

Dated: February 1, 2010

## DEMAND FOR JURY TRIAL

On behalf of himself and Members of the Class defined above, the Plaintiff hereby requests

trial by jury of all issues so triable.

_____
Hunter J. Shkolnik #2031458
**RHEINGOLD, VALET, RHEINGOLD,
SHKOLNIK & McCARTNEY, LLP**
113 East 37TH Street
New York, New York, 10016
Tel (212)684-1880
Fax (212)689-8156
hshkolnik@rheingoldlalw.com


/S/ Richard J. Arsenault
Richard J. Arsenault #02563
John R. Whaley #25930
**NEBLETT, BEARD & ARSENAULT**
P.O. Box 1190
Alexandria, LA  71309-1190
Tel (318) 487-9874
Fax (318) 561-2591
rarsenault@nbalawfirm.com
jrwhaley@nbalawfirm.com


/S/ John R. Climaco
 John R. Climaco (OH #0011456)
Patrick G. Warner (OH #0064604)
**CLIMACO, LEFKOWITZ, PECA,**

22

**WILCOX & GAROFOLI CO. LPA**
55 Public Square, Suite 1950
Cleveland, OH 44113
Tel (216) 621-8484
Fax (216) 771-1632
jrclim@climacolaw.com
pgwarn@climacolaw.com


/S/ Frank E. Piscitelli
Frank E. Piscitelli, Jr. (OH #0062128)
55 Public Square, Suite 1950
Cleveland, OH 44113
Tel (216) 931-7000
Fax (216) 931-9925
frank@feplaw.com


/S/ Mark Geragos
Mark Geragos
Shelley Kaufman
Tamar Arminak
**GERAGOS & GERAGOS**
644 S. Figueroa Street
Los Angeles, CA 90017
Tel (213) 625-3900
Fax (213) 625-1600
mark@geragos.com
kaufman@geragos.com
arminak@geragos.com


/S/ D. Scott Kalish
D. Scott Kalish (OH #0063002)
**SCOTT KALISH CO LLC**
405 Western Reserve Bldg.
1468 West Ninth Street
Cleveland, Ohio 44113
scottkalishcollc@cs.com


23